UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TONEY LEE JONES, ET AL. | CIVIL ACTION |
| VERSUS | NO. 10-4383 |
| COASTAL CARGO COMPANY, INC., ET AL. | SECTION "N" (3) |

## ORDER AND REASONS

Before the Court is the "Motion for Summary Judgment" (Rec. Doc. 62), filed by Defendant Coastal Cargo Company, Inc. ("Coastal Cargo"). This motion is opposed by Plaintiffs. (See Rec. Doc. 65). After considering the memoranda filed by the parties (including the Reply at Rec. Doc. 71), the Court rules as set forth herein.

**I.    BACKGROUND**

Plaintiff Toney Lee Jones ("Jones") alleges that he was injured on October 23, 2010 when he fell from a rope ladder leading from the M/V FANTASTIC to a barge situated next to the vessel. (Exhibit A to Rec. Doc. 62, pp. 47, 154-161). On that date, the M/V FANTASTIC was docked in the Mississippi River at the Louisiana Avenue Wharf in New Orleans, Louisiana. (*Id.* at p. 50). Coastal Cargo, a stevedoring company, was discharging steel products from the vessel to the shore and to two barges, which were moored riverside of the vessel. (*Id.* at pp. 42, 47-50).

Associated Marine & Industrial Staffing ("AMI Staffing") is a staffing company that provides

personnel to Coastal Cargo for Coastal Cargo's stevedoring operations. (Exhibit B to Rec. Doc. 62).

Jones was hired by AMI Staffing on August 9, 2010 and immediately was assigned to work for Coastal Cargo. (Exhibit A to Rec. Doc. 62, pp. 173-175). He continued working solely for Coastal Cargo until his accident on October 23, 2010. (*Id.* at p. 75). At Coastal Cargo, Jones worked under the direction and control of Coastal Cargo's superintendent, Malcolm Honea ("Honea"), for approximately three months prior to this accident. (*Id.* at pp. 170-172). On the day of his accident, Plaintiff was working as a forklift operator. (*Id.* at p. 48).

## II.    ARGUMENTS OF THE PARTIES

Coastal Cargo asserts that Jones was an "employee" covered by the Longshore and Harbor Worker's Compensation Act ("LHWCA")[1] and, further, that he was the "borrowed employee"[2] of Coastal Cargo. Coastal Cargo analyzes each of these factors in detail. (See Rec.

---

[1] 33 U.S.C. §902(3) provides that an "employee" "… means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations..." On the day of the accident, Coastal Cargo was discharging cargo from the M/V FANTASTIC to barges in the Mississippi River and to shore. (Exhibit A to Rec. Doc. 62, pp. 47-52). Further, Jones was allegedly injured when he fell from a Jacob's ladder on the portside of the M/V FANTASTIC onto a barge floating in the Mississippi River. 33 U.S.C. §903(a) states that "Except as otherwise provides in this section, compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel)."

[2] In *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312-13 (5th Cir. 1969), the Fifth Circuit enunciated a nine-factor test to determine borrowed employee status under the LHWCA. The nine factors include:
(1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?
(2) Whose work was being performed?
(3) Was there an agreement, understanding or meeting of the minds between the original and the borrowing employer?
(4) Did the employee acquiesce in the new work situation?

Doc. 62-1, pp. 7-15).  In sum, Coastal Cargo argues that (1) Coastal Cargo exercised authoritative direction and control over the work that Jones performed for Coastal Cargo, including control over Jones in the assignment of job and the performance of his work. (2)  Jones was performing stevedoring work of Coastal Cargo in the months and weeks before his accident, as opposed to working for AMI Staffing, which was simply a staffing company that provides human resource solutions to companies such as Coastal Cargo. (3) Coastal Cargo and AMI Staffing had an agreement that Jones would be the "borrowed servant" of Coastal Cargo, that Jones would perform the work of Coastal Cargo, and that Coastal Cargo had the right to control the manner and details of the work. (Exhibit B-1, to Rec. Doc. 62, p. 2). (4) Jones was fully aware that he would be working for Coastal Cargo and he was happy with this arrangement. (Exhibit A to Rec. Doc. 62, p. 173). (5) AMI Staffing did not control Jones after it assigned Plaintiff to Coastal Cargo, nor did it have any significant contact with Jones after the borrowing occurred. Indeed, after AMI Staffing assigned Jones to work for Coastal Cargo, Jones received all of his work instructions and supervision from Coastal Cargo. (*Id.* at pp. 171-173). (6) Coastal Cargo furnished the tools Jones used to complete his work and the place where Jones performed his work. (*Id.* at pp. 173-74). (7) Jones' employment was over a considerable amount of time. Specifically, he began working for Coastal Cargo immediately after he was hired by AMI Staffing on August 9, 2010. (*Id.* at pp. 174-75).  Jones continued working for Coastal Cargo for approximately three months until the day of his accident on October 23, 2010.  (*Id.* at p. 175).

---

(5) Did the original employer terminate his relationship with the employee?
(6) Who furnished the tools and the place for performance?
(7) Was the new employment over a considerable length of time?
(8) Who had the right to discharge the employee?
(9) Who had the obligation to pay the employee?

Prior to his injury, Jones intended to continue working for Coastal Cargo. (*Id.* at p. 176). (8) the AMI Staffing/Coastal Cargo agreement specifically recognized that Coastal Cargo had the right to refuse to accept an employee provided by AMI Staffing and request a replacement employee. (Exhibit B-1 to Rec. Doc. 62, p. 2).  Finally, (9) the AMI Staffing/Coastal Cargo agreement set forth the hourly rate Coastal Cargo would pay for each person provided by AMI Staffing to Coastal Cargo. (*Id.*) The payments made by Coastal Cargo to AMI Staffing paid Jones' salary for the work he performed for Coastal Cargo.[3]  Thus, considering the above analysis, Coastal Cargo asserts that, under the LHWCA, 33 U.S.C. §905(a), Jones' exclusive remedy against his employer, including his borrowing employer, is compensation and, therefore, Coastal Cargo is tort immune.  Thus, Coastal Cargo asserts that summary judgment should be entered in its favor, finding that Jones is covered by the LHWCA and that Jones was Coastal Cargo's borrowed employee, thereby requiring the dismissal of Plaintiffs' tort claims, with prejudice.

Jones, on the other hand, argues that the following facts show that AMI Staffing, as opposed to Coastal Cargo, was Jones' sole employer: (1) Jones testified that he was working for AMI Staffing at Coastal Cargo. ((Exhibit A to Rec. Doc. 65, p. 7). (2) Jones testified that the crew members were not Coastal Cargo people, but instead, were AMI Staffing people. (*Id.* at p. 60). (3) Jones testified that he was placed at the Coastal Cargo job by AMI Staffing, and that he was paid by AMI Staffing - not Coastal Cargo.  (*Id.* at pp. 95-96; Exhibits B, C, and D to Rec. Doc. 65). (4) After the accident, Jones was paid worker's compensation benefits by AMI Staffing - not Coastal Cargo. (*Id.* at pp. 125-26). (5) The "Employer's First Report of Injury"

---

[3]   When a company furnishes the funds to pay the employee's wages through the lending employer, this payment satisfies this obligation to pay factor. *Melancon v. Amoco Prod'n Co.*, 834 F.2d 138, 1246(5th Cir. 1988), *reh'g granted on other grounds*, 841 F.2d 572 (5th Cir. 1988).

filed with the U.S. Dept. Of Labor shows that AMI Staffing and its employee, Johnny Salinas, completed it. (Exhibit designated "Scan 2476", attached to Rec. Doc. 65). Further, AMI Staffing filled out another "First Report of Injury", which was completed by an AMI Staffing employee, Jessica Arceneaux ("Arceneaux"). (Unmarked exhibit to Rec. Doc. 65). (6) A Coastal Cargo Crew List, which lists the date of accident as October 23, 2010, lists 17 people as Coastal employees; however, absent from that crew list is Jones. (Unmarked exhibit to Rec. Doc. 65). (7) All of the accident investigation and reporting in this case was done by AMI Staffing[4], not Coastal Cargo, despite the fact that the accident occurred on Coastal Cargo's premises. Based on the above, Jones asserts that there are genuine issues of material fact precluding a legal conclusion that he was the borrowed employee of Coastal Cargo, requiring the denial of the instant motion.

## III.    DISCUSSION

### A.    Legal Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the

---

[4] In this regard, Jones notes that it was AMI Staffing employee, Arceneaux, who took the only photographs of the accident scene. (Exhibit designated "Scan 2477", attached to Rec. Doc. 65).

suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); see also *Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324, 106 S.Ct. 2553; see also *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*citations omitted*). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (*emphasis in original*) (*citing Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075. Rather a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

**B.    Analysis**

First, Plaintiffs failed to specifically address any of the *Ruiz* factors or provide any legal rationale as to why Coastal Cargo should not be considered Jones' borrowing employer. Plaintiffs' contention that Jones was "working FOR AMI AT Coastal Cargo" does not overcome the ample evidence to the contrary set forth by Coastal Cargo in its motion.  While Coastal Cargo concedes that Plaintiff was initially hired by AMI Staffing in August 2010 and was still a nominal employee of AMI Staffing at the time of this accident, the Court concludes that Jones' own factual testimony and the terms of the Service Agreement between AMI Staffing and

7

Coastal Cargo establish as a matter of law that Jones was the borrowed employee of Coastal Cargo.

Indeed, Jones admits that he was supervised by Honea, the Coastal Cargo superintendent. Jones received all of his directions and instructions from Honea. (Exhibit A to Rec. Doc. 62, pp. 170-73). Jones never received any instructions from any AMI Staffing personnel while working for Coastal Cargo. (*Id.* at 172-73). Further, the Court agrees with Coastal Cargo's uncontroverted analysis of the *Ruiz* factors.

While Plaintiffs emphasize that AMI Staffing paid Jones with AMI Staffing checks and that Coastal Cargo did not pay him, the law is clear that when a company furnishes the funds to pay the employee's wages through the lending employer, this payment satisfies the obligation to pay factor set forth in *Ruiz*. *Melancon*, 834 F.2d at 1246.  Coastal Cargo has provided a Declaration from Clint Sciba, the Chief Executive Officer of AMI Staffing, who confirms that the amounts paid by Coastal Cargo for an employee, such as Jones, under the AMI Staffing/Coastal Cargo contract was used by AMI Staffing to pay the worker's wages and other benefits. (Exhibit D to Rec. Doc. 71). As for Plaintiffs' argument concerning the fact that Plaintiff's worker's compensation benefits were paid by AMI Staffing and not Coastal Cargo, the agreement between AMI Staffing and Coastal Cargo specifically provided that the hourly rate for personnel billed by AMI Staffing to Coastal Cargo includes "Agency's (AMI's) responsibility of Social Security, Medicare, State Unemployment, Worker's Compensation Insurance . . ." (Exhibit B-1 to Rec. Doc. 62, p. 2). Further, the agreement provided that AMI Staffing would provide statutory worker's compensation and U.S. Longshore Act coverage for the State of Louisiana in favor of Coastal Cargo. (*Id.* at p. 3).

As for Plaintiffs' focus on the Reports of Injury prepared by AMI Staffing and submitted to the U.S. Department of Labor, such is of no moment to this issue. Further, Coastal Cargo's superintendent, Honea, testified at his deposition that he investigated this accident for Coastal Cargo and prepared an accident report on a "Jackson Kearney Group[5] Incident Report" (Exhibit C to Rec. Doc. 71, pp. 6-20; Exhibit C-6 to Rec. Doc. 71). However, whether Coastal Cargo prepared an incident report or investigated this accident is not a factor in the *Ruiz* analysis of borrowed employee status.

Plaintiffs also suggest there is some significance that the only photographs of the accident scene were taken by an AMI Staffing employee; however, this also has no relevance to the *Ruiz* analysis. Plaintiffs' argument regarding the Coastal Cargo time sheet allegedly listing 17 people as Coastal Cargo employees, but not listing Jones, is also without merit. As Coastal Cargo notes, this time sheet shows various Coastal Cargo employees who were working during the day shift on October 23, 2010, from 0730 to 1800 hours. However, Jones' accident occurred on an earlier shift, in the early morning hours of October 23, 2010 at approximately 0215 hours – *before* the day shift. (Exhibit C-6 to Rec. Doc. 71). This, of course, explains why Jones is not listed on the sheet: he was not working from 0730 to 1800 hours on October 23, 2010. Rather, Jones began working at 1800 hours on October 22, 2010, and he stopped working at 0300 on October 23, 2010. (Exhibit A to Rec. Doc. 62, p 148).

Thus, for the reasons stated herein, the Court finds that Jones was a longshoreman employee covered by the LHWCA, that Jones was the "borrowed employee" of Coastal Cargo,

---

[5] Coastal Cargo is a division of Jackson Kearney Group, as shown on Coastal Cargo's letterhead. (Exhibits E and E-1 to Rec. Doc. 71).

and that Jones' and his wife's[6] exclusive remedy against Coastal Cargo is compensation under the LHWCA. Thus, Plaintiffs' tort suit against Coastal Cargo is hereby dismissed with prejudice at Plaintiffs' costs.

## IV. CONCLUSION

Considering the foregoing, **IT IS ORDERED** that the **"Motion for Summary Judgment" (Rec. Doc. 62)** is **GRANTED**. Thus, Plaintiffs' tort claims against Coastal Cargo are hereby dismissed as a matter of law, with prejudice, at Plaintiffs' costs. Plaintiffs' claims against Coastal Cargo are limited to compensation under the LHWCA.

New Orleans, Louisiana, this 19th day of August 2011.

                                                         _____
                                                                   **KURT D. ENGELHARDT**
                                                                   **United States District Judge**

---

[6] If an LHWCA employee cannot properly assert a §905(b) claim, then his spouse is also precluded from asserting a claim. See §905(a); *Thibodeaux v. J. Ray McDermott & Co.*, 276 F.2d 42 (5th Cir. 1960).