UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TONEY LEE JONES, ET AL. | CIVIL ACTION |
| VERSUS | NO. 10-4383 |
| COASTAL CARGO COMPANY, INC., ET AL. | SECTION "N" (3) |

## ORDER AND REASONS

Before the Court is the "Motion for Summary Judgment" (Rec. Doc. 43), filed by Defendants Geden Lines, Genel Denizcilik Nakliyati A.S. (collectively, "Geden Lines") and Icon Fantastic, L.L.C. ("Icon Fantastic") (all collectively, "the movants"). This motion is opposed by Plaintiffs. (See Rec. Doc. 46). After considering the memoranda filed by the parties (including the replies at Rec. Docs. 54 and 74), the Court rules as set forth herein.

**I.   BACKGROUND**

Plaintiff Toney Lee Jones ("Jones") alleges that he was injured on October 23, 2010 when he fell from a rope ladder leading from the M/V FANTASTIC to a barge situated next to the vessel. (Rec. Doc. 1).  On that date, the M/V FANTASTIC, owned and operated by Icon Fantastic and Geden Lines,  was docked in the Mississippi River at the Louisiana Avenue Wharf in New Orleans, Louisiana.  (Exhibit A to Rec. Doc. 43). Individuals, including Jones, working with Coastal Cargo, a stevedoring company, were discharging steel products from the vessel to the shore and to two barges, which were moored riverside of the vessel.

The Coastal Cargo stevedores brought with them two rope Jacob's ladders and rigged them to the port side of M/V FANTASTIC. After the accident occurred, Malcolm Honea, Jones' supervisor and the Coastal cargo ship superintendent (see Exhibit A to Rec. Doc. 74, p. 7), filled out an incident form, stating as follows:

> Toney Jones had went to go to the barge at # 4 (CC 9747) to retrieve his keys from a forklift in the barge.
>
> He claimed that while going down the shipside Jacobs ladder, the ladder came loose and he fell to the deck of the barge.
>
> After investigating the scene, the ship Jacob ladder was found to be fully secured to the handrail of the vessel but fully unrolled. Hanging in full length.

(Exhibit D to Rec. Doc. 43). Notably, the day before this accident occurred, a United States Coast Guard Port State Control inspection team boarded the M/V FANTASTIC and did not find any deficiencies. (Exhibit B to Rec. Doc. 43).

Plaintiffs' Complaint states "that a crewman working on the M/V FANTASTIC, untied and/or loosened the ladder" without his knowledge. (Rec. Doc. 1, ¶ 6). The movants have filed the instant motion, arguing that the M/V FANTASTIC and her crew did not have anything to do with the alleged incident and that Plaintiffs cannot carry their summary judgment burden to show otherwise.

## II.   ARGUMENTS OF THE PARTIES

The movants asserts that they did not breach any of the duties set forth in *Scindia Steam Navigation v. De Los Santos*, 451 U.S. 156 (1981)[1], and that neither the ship, her gear, crew, nor

---

[1] The Supreme Court in *Scindia* articulated the scope of a vessel's duty under section 5(b) of the LHWCA. The Court explained that vessel liability may be found in three instances:

appurtenances caused or contributed to the injuries alleged by Jones.

Addressing the first potential duty, the "turnover duty", the movants contend that, according to the evidence, the M/V FANTASTIC was turned over to the stevedores in a safe condition. Notably, it is a new vessel, which was built in China and only recently delivered to Geden Lines in August 2010. (Exhibit E to Rec. Doc. 43). On October 21, 2010, when the vessel was turned over to the stevedores for discharge operations, the Coastal Cargo stevedores' supervisor, along with the ship's chief officer and second officer, did not have any problems with the ship, and no deficiencies or problems were pointed out to the vessel. (Exhibit C to Rec. Doc. 43). Further, a United States Coast Guard Port State Control team boarded the M/V FANTASTIC on October 22, 2010 to inspect the vessel and did not find any deficiencies. (Exhibit B to Rec. Doc. 43). The movants also note that the Jacob's ladder at issue, from which Jones allegedly fell, belonged to the Coastal Cargo stevedores, not the vessel. (Exhibit A to Rec. Doc. 43, ¶¶5-6; Exhibit C to Rec. Doc. 43). In sum, the movants allege that there is no evidence that the vessel was defective at turnover in any way that could have caused the alleged incident.

As for the second potential duty, the "active control duty", the movants claim that the

---

1) if the vessel owner fails to warn on turning over the ship of hidden defects of which he should have known.

2) for injury caused by hazards under the control of the ship.

3) if the vessel owner fails to intervene in the stevedore's operations when he has actual knowledge both of the hazard and that the stevedore, in the exercise of obviously improvident judgment, means to work on in the face of it and therefore cannot be relied on to remedy it.

*Greenwood v. Societe Francaise De Transportes Maritime*, 111 F.3d 1239, 1245 (5th Cir.), *cert. denied*, 522 U.S. 995, 118 S.Ct. 558, 139 L.Ed.2d 400 (1997) (internal quotations and citations omitted). With regard to the third duty, commonly called the "duty to intervene," "[t]he shipowner defers to the qualification of the stevedoring contractor in the selection and use of equipment and relies on the competency of the stevedore company." *Greenwood*, 111 F.3d at 1249 (citing *Scindia*, 101 S. Ct. at 1624.) "[I]n order for the expert stevedore's judgment to appear 'obviously improvident,' that expert stevedore must use an object with a defective condition that is so hazardous that anyone can tell that its continued use creates an unreasonable risk of harm – even when the stevedore's expertise is taken into account." *Id.*

3

Jacob's ladders were brought on board by and rigged by Coastal Cargo stevedore personnel, not the ship's personnel. (Exhibit A to Rec. Doc. 43, ¶¶5-6). The movants note that these ladders were used throughout the discharge operation by the stevedore's employees so that they could go down to the barges alongside the ship. (Exhibit A to Rec. Doc. 43, ¶7). The "Incident Report" indicates that Jones' accident allegedly occurred at approximately 2:15 a.m. on October 23, 2010. (Exhibit D to Rec. Doc. 43).  The M/V FANTASTIC's duty officer who was making rounds on deck at the time of the alleged accident was Second Officer Serhat Aksoy ("Aksoy"). The movants contend that neither Aksoy, nor any other seaman making rounds with him at the time of the alleged accident, loosened, untied or adjusted the riggings securing the ladders to the ship's railings on the morning of October 23, 2010 and they had no reason to do so.  (Exhibit A to Rec. Doc. 43, ¶14). Thus, the movants argue that the Jacob's ladders were not under the active control of the vessel and that none of the actions of the vessel's personnel caused Plaintiff's accident.

     As for the third and last potential duty, the "duty to intervene", the movants assert that there is no evidence that the vessel or its crew had actual knowledge of the danger that the Jacob's ladder may have been loose and that the expert Coastal Cargo stevedore's Jacob's ladders were so hazardous that anyone could tell that their continued use created an unreasonable risk of harm. The movants note that during Aksoy's rounds on the morning of the accident, he noticed that the Jacob's ladders' "double knotted" rigging was still the same, just as it had been, throughout the ship's discharge operation from the time that the stevedores first installed the ladders on October 21, 2010, through the time that they knocked off and left the ship at about 0300 on October 23, 2010. (Exhibit A to Rec. Doc. 43, ¶14). Further, Plaintiff's own supervisor,

Honea, found the Jacob's ladder, "to be fully secured to the handrail of the vessel, but fully unrolled, hanging in full length." (Exhibit D to Rec. Doc. 43). Thus, the movants allege that no duty to intervene was breached.

In opposition, Plaintiffs allege that the vessel owner was negligent, and that it also breached its non-delegable duty to provide a seaworthy vessel to Plaintiff. As he did in his Complaint, in his Opposition to the instant motion, Plaintiff "maintains that a crewman working on the M/V FANTASTIC untied and/or loosened the ladder without petitioner's knowledge, causing him to fall from the ladder and causing injuries to plaintiff. (Rec. Doc. 1, ¶6; Rec. Doc. 46, p. 2). Plaintiff even attaches an affidavit to his opposition, which states:

> That he believes that it was a crew member of the M/V Fantastic that tied the jacobs ladder that he fell from, to the ship,
>
> That, immediately after the subject accident of October 23, 2010, all of the Coast cargo employees were pulled from the ship and not allowed to touch any of the jacobs ladders that were attached to the ship, only M/V Fantastic crew members were allowed to stay aboard,
>
> That it was the lack of adequate tying and maintenance of the jacobs ladder by the M/V Fantastic crew that caused the rope to come loose from the ladder and cause his accident;

(Unmarked Affidavit attached to Rec. Doc. 46). Plaintiffs asserts that this affidavit, alone, creates a material issue of fact which precludes summary judgment. Plaintiffs also contends that despite the movants' suggestion to the contrary, it is currently unknown as to who tied the rope to the ladder from which Plaintiff fell. Plaintiffs support this contention by attaching Exhibit B and C to the opposition, indicating that Jessica Arceneaux, the AMI staffing employee who initially investigated the accident, did not know who tied the rope ladder.

Plaintiffs contend that the shipowner knew or should have known of the tying of the

5

Jacob's ladder and that such presented an unreasonable risk of harm to the stevedores. (See Rec. Doc. 46, p. 7).  Plaintiff states, "[i]n this case, the shipowner not only had actual or constructive knowledge that the Jacob's ladder in question was dangerous, but it also knew or should have known that it could not rely upon the stevedore to remedy the dangerous condition. It therefore had a duty to intervene to protect these longshoremen, including Mr. JONES."  (*Id.*)

Plaintiffs go on to opine that the "proximate cause of this accident was the joint and concurrent negligence of the M/V FANTASTIC, and its crew members." (*Id.*) Plaintiffs further argue:

> The defendants were negligent in failing to repair the loose jacobs ladder, failed to secure the ladder to the vessel, failed to provide Mr. JONES a safe place to work, failed to institute proper inspection procedures to determine if the vessel's winch equipment was safe to operate on board the vessel, and in having an inexperienced and/or incompetent crew on board the vessel, who did not have the authority, knowledge or skill to repair the defective jacobs ladder. Mr. Jones was in no way responsible for this accident of October 23, 2010, and Mr. JONES' resulting injuries.

(Rec. Doc. 46, pp. 7-8).  Plaintiffs further contend that the shipowner's absolute duty to provide members of the crew with a seaworthy vessel is an obligation which is not dependent on fault.

Last, Plaintiffs assert that Jones' affidavit and the two other exhibits attached to the opposition "show that further discovery must be conducted before the Court and the parties will know who tied the subject Jacob's ladder to the M/V FANTASTIC, and who was responsible for its construction, maintenance, observation, and repair." (Rec. Doc. 46, p. 9).  They also contend that the deposition testimony of Plaintiff (which had not yet been transcribed on July 14, 2011, when this Opposition was filed), "will further bolster and call into question the defendants' allegations in their motion." (Rec. Doc. 46, p. 9). Plaintiffs then assert that they "will supplement their opposition to add the deposition of plaintiff as soon as it is transcribed and received by

plaintiffs." (*Id.*)[2]

### III.    DISCUSSION

####    A.    Legal Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); see also *Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2553; see also *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986);

---

[2]    Plaintiffs never did so; however, the movants quote portions from this deposition in their Reply at Rec. Doc. 54).

*Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*citations omitted*). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (*emphasis in original*) (*citing Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075. Rather

a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

### B. Analysis

First, to address Plaintiffs' contention that the movants owed a duty to Jones to furnish a seaworthy vessel, this argument is without merit. The duty to furnish a seaworthy vessel is not owed to marine workers covered by the Longshore and Harbor Workers' Compensation Act ("LHWCA"). *Broussard v. Great Creation Shipping, Ltd.*, 410 F. Supp. 2d 498, 500 (E.D. La. 2004). Jones is clearly covered under the LHWCA based upon the situs of his alleged incident and his status as a longshoreman engaged in the discharge of cargo from a vessel. Thus, the movants owe no duty to furnish a seaworthy vessel.

Plaintiffs' remaining arguments focus on the contention that the movants were negligent[3], without providing any evidentiary support therefor, aside from Jones' self-serving affidavit, which merely restate the same conclusory statements made in the Complaint at Rec. Doc. 1, paragraph 6. The Fifth Circuit has held that, in order to avoid summary judgment on a claim brought pursuant to 33 U.S.C. §905(b), a stevedore is required to present evidence showing not only that it is possible, but that it is *more likely than not*, that the ship's crew or equipment caused his injuries. *Meza v. MSC Ship Mgmt. HK, Ltd.*, 2009 U.S. Dist. LEXIS 18575, *4, (E.D. La. August 18, 2009). Further, the *Meza* court explained that, under 33 U.S.C. §905(b), to survive summary judgment, a plaintiff is required to present evidence showing not only that it is possible that defective equipment, belonging to the vessel, was a cause of his accident, but that it

---

[3] Plaintiffs do not specifically address the *Scindia* factors.

9

is more likely than not that the equipment belonged to the ship and was defective. *Id.* Plaintiffs have failed to carry this burden for the reasons that follow.

Plaintiffs have introduced no evidence to support a conclusion that the ladder from which Jones allegedly fell was defective or improperly fastened to the vessel, or that the ladder belonged to the ship. Plaintiffs' speculative, self-serving allegations are directly contrary to the Aksoy's Declaration, wherein he stated that "the Coastal Cargo stevedores rigged two rope Jacob's ladders to the port side of the vessel" and that "these ladders were the property of the stevedores, and were not ship's equipment. (Exhibit A to Rec. Doc. 43, ¶5). While Plaintiffs claim that it is unknown who tied the rope to the ladder from which Jones fell (See Exhibits B and C to Rec. Doc. 46, which actually deals only with the knowledge of AMI employee Arceneaux), the movants set forth evidence to establish that the two rope Jacob's ladders rigged by the stevedores to the ship's port side railing were the property of the Coastal Cargo stevedores and had been rigged by them following the ship's arrival at Louisiana Avenue on October 21, 2010.[4] Moreover, the Coastal Cargo "gear request sheet" indicates that the two rope Jacob's ladders, intended for use during the discharge of the M/V FANTASTIC, were stevedore's property. (Exhibit C to Rec. Doc. 43). Also, the stevedore's "Incident Report", filled out by Honea, shows that he personally checked the rope Jacob's ladder after Jones' accident and found that it was still securely fastened to the ship's railing. (Exhibit D to Rec. Doc. 43).[5] Indeed, Jones' deposition makes it clear that he merely assumes the ladders at issue were ship's equipment.

---

[4] Honea, the Coastal Cargo superintendent testified that the Jacob's ladders were the property of Coastal cargo. (Exhibit A to Rec. Doc. 74, p. 28).

[5] Honea testified similarly in his deposition. (Exhibit A to Rec. Doc. 74, pp. 74-76).

>   Q: And the rope ladders, who do they belong to?
>
>   A: To the FANTASTIC, I would think. I don't know.

(Exhibit A to Rec. Doc. 54, pp. 64-65). The deposition testimony further reveals:

>   Q: Were the rope ladders already in place when you were asked by
>
>   Mr. Malcolm to go operate the fork lift?
>
>   A. Yes.
>
>   Q: Do you know how long they had been there?
>
>   A: No, sir
>
>   Q: And you don't know who put them there, do you?
>
>   A: No, sir.
>
>   Q: An you don't know whose property they were, do you?
>
>   A: (Shook head negatively)
>
>   Q: You're shaking your head.
>
>   A: No, sir

(Id. at pp. 69-70). Plaintiffs have clearly failed to carry the burden to show that the ladders were the ship's equipment.

Likewise, Plaintiffs have provided no support, other than Jones' own self-serving allegations, that a crewman of the M/V FANTASTIC untied and/or loosened the ladder. Jones has provided no explanation for how he fell. His deposition testimony does not support his allegations in this regard. Specifically, Jones admits that he never saw anyone loosen, untie, or cut the ropes:

>   Q: How did the rope ladder happen to fall with you on it?

>A: It just came down with it. Just came down with me.
>
>. . . .
>
>Q: Did the ropes break?
>
>A: I don't know. When I hit the deck, I was out. I don't know if it broke or came loose or whatever.
>
>Q: Did anyone loosen or untie the ropes?
>
>A: I couldn't tell you that. I don't know.
>
>Q: Did you see anyone loosen or untie the ropes?
>
>A: No, sir.
>
>Q: Did you see anyone cut the ropes?
>
>A: No, sir.
>
>Q: So, to sum it all up, you don't know how the ladder happened to become unfastened, do you?
>
>A: Correct

(Exhibit A to Rec. Doc. 54, pp. 92-93). To explain the fall, in his deposition, Jones testified, "I just fell, just fell", and "I just slipped, I just fell." (Exhibit A to Rec. Doc. 54, p. 106). Simply asserting a belief that a ship owner breached a *Scindia* duty is not sufficient to survive summary judgment. Indeed, a plaintiff wishing to survive summary judgment must submit admissible evidence or testimony to establish that it is *more likely than not that a duty was breached*.

In that regard, in his affidavit, Plaintiff merely states that he "believes that it was a crew member of the M/V Fantastic that tied the Jacob's ladder that he fell from to the ship." (Unmarked Affidavit attached to Rec. Doc. 46). The affidavit also claims that "it was the lack of adequate tying and maintenance of the Jacob's ladder by the M/V Fantastic crew that caused the

12

rope to come loose from the ladder and cause his accident." (*Id.*)  However, in his deposition, Jones testified as follows:

> Q: Going back to the rope ladders that were used on the port side of the FANTASTIC to access the two barges, when you worked the 18:00 shift to the 03:00 shift on October 22 and 23, you didn't see those rope ladders rigged, did you?
>
> A: I've seen –
>
> Q: You didn't see anybody rig them?
>
> A: No, sir. No, sir.
>
> Q: And you didn't see anybody unrig them, do you?
>
> A: Correct.
>
> Q: So if anyone rigged them or unrigged them, you didn't see that?
>
> A: Correct.
>
> Q: As to the two ladders you described to us, the one in the forward part of the ship that you accessed your forklift machine in the first barge and then later the other ladder further aft that you say you fell from, did you ever see anybody pull up any of those rope ladders –
>
> A. No, sir.
>
> Q: -- while you were working?
>
> A: No, sir.
>
> Q: And when you went back intending to go down to the barge to the forklift to get your keys, and that was at the rope ladder near No. 4, can you tell us before you actually went over the railing if that rope ladder had been pulled up part of the way or not?
>
> A: I couldn't tell you that.
>
> Q: You don't know?

>A: I wouldn't know.

>Q: But, in any event, there was nobody around the top of that ladder on the ship's main deck when you went down, right?

>A: No, sir.

(Exhibit A to Rec. Doc. 54, pp. 202-204).  Still further, on the showing made, no evidence has been presented to establish that it was more likely than not that Jones fell due to defective ladders or improper rigging. Indeed, Jones himself cannot explain how or why he fell:

>Q: So the whole ladder came down with you; is that what you have told us?

>A: I didn't say that. I say when I came across the balcony holding on to the ladder, when down, blacked out. I don't know if the ladder was with me, but I know that the ladder came down as far as the barge when I hit the deck.

>Q: So the ladder came down; is that correct?

>A: Yes. I don't know if it came aloose [sic] or whatever, but it just didn't hold.

(Exhibit A to Rec. Doc. 54, p. 99). Jones' version of events immediately after the accident occurred was that he simply slipped and fell.

>Q: Did Malcolm ask you what happened?

>A: He just asked me what happened. I said, I just slipped, I just fell.

(Exhibit A to Rec. Doc. 54, p. 106).  This Court concludes that such is not sufficient to create a genuine issue of material fact at trial. If the evidence does not "suggest which of the speculative theories…is most plausible," it is insufficient to support a jury finding identifying one of the theories as the cause. *Little*, 37 F.3d at 1078-79. Thus, due to a lack of any evidence indicating that the most plausible cause of Jones's injuries was any defect in the ship's equipment, or

actions of the ship's crew, the movants are entitled to summary judgment.

### IV. CONCLUSION

Considering the foregoing, **IT IS ORDERED** that the **"Motion for Summary Judgment" (Rec. Doc. 43)** is **GRANTED**. Thus, Plaintiffs' claims against the movants are hereby dismissed with prejudice, at Plaintiffs' costs.

New Orleans, Louisiana, this 1st day of September 2011.

_____
**KURT D. ENGELHARDT**
**United States District Judge**